UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 2:19-CV-14343-ROSENBERG/MAYNARD

FRANK N. BONUSO,

    Plaintiff,

v.

PAUL BLACKMAN in his capacity as
Sheriff of Highlands County Sheriff's Office,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

THIS CAUSE is before the Court on Defendant Paul Blackman's Motion to Dismiss Plaintiff's Revised Complaint. DE 39. The Court has considered Defendant's Motion; two responses (DE 41, 42) filed by Plaintiff Frank N. Bonuso, who is proceeding *pro se*; and Defendant's Reply (DE 44). For the reasons that follow, the Motion is GRANTED.

### I. BACKGROUND

Facts in this section are derived from allegations in Plaintiff's Revised Complaint (DE 38) and are accepted as true for present purposes.[1] Plaintiff Frank N. Bonuso is a Florida-based general contractor. 4 ¶ 14. On October 5, 2017, an individual named Debra Graves contacted Plaintiff by phone to discuss hurricane damage at her residence. 2–3 ¶ 8. Graves provided Plaintiff with a copy of her insurance policy, and an appointment was scheduled for October 8, 2017. *Id.* After arriving at Graves's residence at noon on October 8, Plaintiff walked the property with Graves and took 201 photos of the property. 3 ¶ 9. When Graves inquired what Plaintiff would charge for the repairs, Plaintiff stated that Metro Southeast Inc., the company of which Plaintiff was president, would be paid "10 percent profit and 10 percent overhead," which would be "included in her claim check under

---

[1] Unless cited otherwise, all page and paragraph citations are to the body of the Revised Complaint. DE 38.

overhead and profit." *Id.* Plaintiff agreed to invoice her for his services until the claim check was received. *Id.*

On October 9, 2017, Plaintiff processed the photos taken the day before and called Graves to schedule another appointment for 6:30 p.m. that day. 3 ¶ 10. After arriving, Plaintiff walked the exterior of the property and demonstrated that water from the lawn sprinklers could seep into the residence, which could be an issue with respect to any insurance claim for mold damage. *Id.* Plaintiff then presented Graves with a Work Authorization and Construction Agreement along with several notices required to be provided before the start of construction. *Id.*

On October 10, 2017, Graves asked Plaintiff to appear for a visit from Graves's insurance adjuster on October 12, 2017. 3–4 ¶ 11. Plaintiff agreed to attend, and Plaintiff and Graves agreed that Plaintiff would discuss exterior damage with the adjuster while Graves would discuss interior damage. *Id.* Plaintiff had noticed that the front entry doors were damaged, and on October 11, 2017, Plaintiff arrived to make temporary repairs to the doors, securing them with plastic strapping with Graves's consent. 4 ¶¶ 11–12. On October 12, 2017, Plaintiff arrived to meet with the adjuster. 4 ¶ 13. Plaintiff provided the adjuster with his business card, and the adjuster wrote his contact information on Plaintiff's field report form. *Id.* Plaintiff and the adjuster then walked the property and Plaintiff took additional photos. *Id.* This was the last time Plaintiff visited the site. *Id.*

After this visit, Graves stopped returning Plaintiff's phone calls and text messages. 5 ¶ 15. Plaintiff monitored building permits related to the property and discovered that a permit for complete roof replacement had been issued. *Id.* He reached Graves by phone, and Graves indicated that her insurance proceeds had gone straight to the bank. *Id.* On January 25, 2018, Plaintiff sent a "Notice of Intent to Lien Real Property" to Graves, stating that "[i]t has come to Metro Southeast, Inc. attention [sic] that you have received compensation in the amount of: Sixty Nine [sic] Thousand Dollars ($69,000.00)," and demanding "ten percent overhead and 10 percent profit." DE 38 at 21.

On February 8, 2018, Detective Steven Ritenour of the Highlands County Sheriff's Office initiated an investigation into the matter. *Id.* at 22. Graves relayed to Ritenour that she had declined to sign the contract provided by Plaintiff because she reviewed it and did not feel comfortable. *Id.* Graves stated that Plaintiff was "very pushy about the contract and told her to tell the adjuster that she had signed the contract, even though she did not." *Id.* Graves also stated that that "the adjustor told her to be very careful with [Plaintiff] because something did not sound right." *Id.* Other than using zip ties to secure her door, Graves stated that Plaintiff did no actual work on the property. *Id.* After the appointment with the adjuster, Graves stated that Plaintiff repeatedly demanded that she pay him $14,000 or he would put a lien on her property. *Id.*

On February 15, 2018, Ritenour held a recorded phone call with Plaintiff, a copy of which Plaintiff included in the Revised Complaint. During the course of the conversation, Plaintiff maintained that he was entitled to $14,000, representing approximately twenty percent of Graves's insurance proceeds (ten percent for overhead and ten percent for profit) regardless of the amount of labor or time expended repairing Graves's property:

> Det. Ritenour: [How] much time would you say you've put in?
>
> F. Bonuso: Well, it doesn't make any difference what time I put in. The O.P.—that doesn't mean that she could steal O.P. What she's denying is that she didn't receive it. And the dispute between us is that she did receive it. . . . The dispute isn't whether she, uh, disbursed the funds. Her—her deal was—and I'm sure she's got a hell of a story. Um, she—her deal is, Well, he didn't spend any time on the job. The insurance company doesn't care if I spend one minute on the job. That's why they get paid, 'cause I'm a state-certified contractor.
>
> …
>
> Det. Ritenour: Have you done any construction work there?
>
> F. Bonuso: Of course. I walked . . . you're getting the wrong story here. That doesn't make any difference. What she's doing is telling you I never did any work on the job so I'm not entitled to it.
>
> Det. Ritenour: . . . . [T]hat's actually not what she's telling me.

3

F. Bonuso: Wait a minute.  Well, what—if—if she has the money, okay, and she's not gonna disburse it to me, then she needs to turn it back into the insurance company or I'll go to the State Attorney's Office and convince her she needs to do that.

Det. Ritenour: Okay.

F. Bonus: She's screwing me out of $14,000 is my amount.

[cross talk]

Det. Ritenour: But what—what work have you done though—to justify $14,000?

F. Bonuso: Well, because we haven't started. . . . You don't start working 'til you get money.

Det. Ritenour: But you don't even have a contract with her, so—

F. Bonuso: I have a verbal contract with her.  You got to understand something.  I have a verbal contract with her. . . . I don't even know why she called the police department.

[cross talk]

Det. Ritenour: Well, if you have a verbal contract with her—why'd you try to get her to sign a written contract?

F. Bonuso: The written contract was first and then she turned around and said, "Well this is a—a scheme."  And I said, "What do you mean, 'It's a scheme'?"  And she said, "Yeah, it's a scheme."  I said, "We use this contract all over."  She said, "Well, my attorney said it's a scheme."  I said, "Well, let me know who your attorney is and I'll be happy to talk to him and if there's anything in there that we can adjust, we would do it for you."

…

Det. Ritenour: But how is that money yours when you've got no contract with her, you've done no work other than securing a front door—

F. Bonuso: Because I am the—because I'm the contractor of record.

Det. Ritenour: Okay. That makes—absolutely no sense.[2]

On the basis of his investigation, Ritenour prepared a probable-cause affidavit which led to Plaintiff being arrested and criminally charged.  Plaintiff pled not guilty to two charges: grand theft of $10,000 or more under Fla. Stat. § 812.014 (Count I), and threats or extortion under Fla. Stat. §

---

[2] DE 38 at 27–30.

836.05 (Count II).  On December 13, 2018, a jury returned a unanimous verdict of not guilty as to Count I, and Plaintiff was granted a judgment of acquittal as to Count II.  8 ¶ 29; DE 38 at 68.

On September 17, 2019, Plaintiff filed his original Complaint against Sheriff Paul Blackman, Detective Steven Ritenour, and Deputy Jamie Davidson.  DE 1.  Defendants moved to dismiss the Complaint, and the Court dismissed the Complaint with leave to amend.  DE 37.  In the Revised Complaint, Plaintiff sues only Paul Blackman in his official capacity as Sheriff of Highlands County.  DE 38.  Count I of the Revised Complaint is for malicious prosecution, and Count II is for "Violation of Civil Rights 42 U.S.C. Section 1983."

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").  To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 678 (citing *Twombly*, 550 U.S. at 556).  At the motion to dismiss stage, the "plaintiff's factual allegations are accepted as true. . . . However, conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).  A *pro se* plaintiff's "pleadings are held to a less strict standard than pleadings filed by lawyers and thus are construed liberally."  *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008).

### III.   DISCUSSION

"[A] suit against a governmental official in his official capacity is deemed a suit against the entity that he represents." *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)).  Accordingly, any official-capacity suit must satisfy the requirements of *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978).  In *Monell*, the Supreme Court held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents," but rather "it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.  To state a claim under *Monell*, Plaintiff must show: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

Counts I and II are both claims under section 1983 against Paul Blackman in his official capacity, and therefore both counts must state a claim under *Monell* to survive dismissal.  Count I, styled "Malicious Prosecution," focuses on Ritenour's alleged misconduct in preparing the probable cause affidavit, including his alleged failure to adequately investigate the matter.  Count II, styled "Violation of Civil Rights 42 U.S.C. Section 1983," focuses on Blackman's duty to supervise his staff and review documents filed in support of probable cause.  Under *Monell*, Plaintiff must demonstrate that Highlands County had a policy or custom amounting to deliberate indifference regarding the accuracy of probable-cause affidavits and the supervision of deputies.

The Court previously dismissed substantially identical counts against Blackman, expressly noting the reason why the counts were deficient.  DE 37.  As to the first count, the Court stated:

> …Plaintiff has not pled any facts showing that Highlands County had a policy or custom of misconduct with respect to probable-cause affidavits or malicious prosecution. The Complaint does not include any instances of similar conduct by the Highlands County

6

Sheriff's Office or demonstrate that Ritenour was acting pursuant to official policy or custom.

DE 37 at 6. As to the second count, the Court stated:

> [T]he Complaint includes no facts supporting the allegation that the Highlands County Sheriff's Office fails to train, supervise, or discipline its deputies in a manner constituting a policy or custom. . . . [and] the Complaint does not allege facts showing that Ritenour's actions were the result of such a policy or custom.

DE 37 at 7. Plaintiff has not corrected either of these deficiencies. Liberally construing the Revised Complaint in Plaintiff's favor, it remains devoid of any allegation that the Sheriff's Office, as a matter of policy or custom, fails to thoroughly investigate matters before preparing probable-cause affidavits, fails to adequately vet or review probable-cause affidavits, or systematically fails to supervise or discipline its deputies with respect to investigations and probable-cause determinations.

The Court notes and appreciates that Plaintiff attached to his Revised Complaint a number of documents related to the investigation and underlying prosecution. This information helped the Court better understand the nature of the dispute. However, the law does not permit claims against local governments under section 1983 unless it can be said that the government itself, by virtue of its policy or custom, is responsible. Plaintiff has not shown that the Sheriff's Office had a policy or custom, or that Ritenour acted in accordance with such policy or custom, and therefore both counts fail.[3] Because Plaintiff was already afforded an opportunity to correct these specific deficiencies, and the deadline for amended pleadings was December 10, 2019, the Revised Complaint is dismissed with prejudice.

It is **ORDERED AND ADJUDGED**:

1. Defendant's Motion to Dismiss [DE 39] is **GRANTED**.

2. Plaintiff's Revised Complaint [DE 38] is **DISMISSED WITH PREJUDICE**.

---

[3] In light of the Revised Complaint's failure to state a claim under *Monell*, the Court does not reach the substance of the constitutional claim of malicious prosecution.

3. The Clerk of Court is instructed to **CLOSE** this case, terminating all deadlines and denying all pending motions as moot.

**DONE AND ORDERED** in Chambers in West Palm Beach, Florida, this 18th day of March, 2020.

                                      ROBIN L. ROSENBERG
                                      UNITED STATES DISTRICT JUDGE

Copies furnished to: All counsel of record via CM/ECF